**HONEY GROVE NURSING**
**CENTER, Petitioner**

v.

**UNITED STATES DEPARTMENT**
**OF HEALTH AND HUMAN**
**SERVICES, Respondent.**

No. 14–60468
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 24, 2015.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Jennie Christine Knapp, Esq., Underwood Law Firm, P.C., Amarillo, TX, for Petitioner.

Megan Michael Bauer, Esq., Edmond Dante Anderson, III, Esq., Assistant Regional Counsel, U.S. Department of Health & Human Services Office of the General Counsel Region VI, Dallas, TX, Mike Polston, U.S. Department of Health & Human Services Office of the General Counsel, Baltimore, MD, for Respondent.

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM: *

Honey Grove Nursing Center provides inpatient nursing care to ill and elderly residents. Following an incident in which one of its certified nursing assistants forcibly provided care to an elderly patient, causing bruising and a skin tear, Honey Grove was investigated and found to be in substantial noncompliance with federal regulations governing skilled nursing facilities. After exhausting its administrative appeals without success, Honey Grove now seeks review in this court.

## I.

Honey Grove is a long-term nursing care facility in Texas that participates in federal Medicare and Medicaid programs as a skilled nursing facility. *See* 42 U.S.C. § 1395i–3(a) (providing that a "skilled nursing facility" is an institution primarily engaged in providing residents "skilled nursing care and related services for residents who require medical or nursing care," or "rehabilitation services for the rehabilitation of injured, disabled, or sick persons, and is not primarily for the care and treatment of mental diseases"). As a participant, Honey Grove is required to comply with various federal regulations.

The incident giving rise to the finding that Honey Grove was substantially noncompliant with some of these regulations involved a 77–year old male resident, referred to as Resident 1, who suffered from Alzheimer's, psychosis, and anxiety, among other ailments. It was no secret among Honey Grove's staff that Resident 1 had a history of refusing care and occasionally became physically and verbally aggressive toward the staff; numerous entries in Resident 1's chart discuss his behavioral issues. Additionally, it became apparent that Resident 1 preferred female nurses and staff and was less aggressive when being tended to by a female.

On March 8, 2012, a male certified nurse assistant noticed that Resident 1 had soiled himself. Although Resident 1 protested, the nurse assistant rendered incontinence care, leaving Resident 1 with deep bruising and a skin tear on his arms. Resident 1 complained to the facility administrator, who reported the incident to the Texas Department of Aging and Disability Services, the state agency charged with investigating facilities on behalf of the Centers for Medicare & Medicaid. The report stated that Resident 1 complained that the nurse assistant "came in his room at 5:30 a.m. this morning and beat him up—stated he beat him in his chest with his fists and showed [the facility administrator] a skin tear/stated [certified nurse assistant] told him administrator and 3 others told him to do it."

In response, the state agency conducted an investigation which found that Honey Grove was not in substantial compliance with three regulatory requirements: (1) 42 C.F.R. § 483.13(b) and (c)(1)(i), requiring the facility to ensure residents are free from verbal, physical, sexual, and mental abuse, and corporal punishment or seclusion; (2) 42 C.F.R. § 483.13(c), requiring the facility to develop and implement written policies and procedures prohibiting mistreatment, neglect, or abuse of residents; and (3) 42 C.F.R. § 483.75, requiring the facility to be "administered in a manner that enables it to use its resources effectively and efficiently to attain or main-

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

tain the highest practicable physical, mental, and psychosocial well-being of each resident." The Centers for Medicare & Medicaid Services concurred with the state agency's findings and imposed a $5,550 per day civil penalty based on a finding that Honey Grove's noncompliance posed "immediate jeopardy" during the period from March 3, 2012 through March 9, 2012. The penalties thus totaled $38,850.[1]

Honey Grove requested a hearing before an administrative law judge to challenge the findings of noncompliance and the civil penalty. Based on the written record, the ALJ concluded that Honey Grove was not in substantial compliance with various Medicare participant requirements and that the "immediate jeopardy" finding was not clearly erroneous and the penalty was therefore reasonable. Honey Grove appealed the ALJ's determination to the three-member Department of Health and Human Services (DHHS) Departmental Appeals Board, which upheld the ALJ decision.

## II.

This court has jurisdiction to review the final decision of the DHHS Appeals Board when civil money penalties are imposed pursuant to 42 U.S.C. § 1320a–7a(e). The Appeals Board's findings of fact are deemed conclusive if they are "supported by substantial evidence on the record considered as a whole." *Id.; see also Cedar Lake Nursing Home v. U.S. Dept. of Health and Human Servs.*, 619 F.3d 453, 456 (5th Cir.2010) ("Ordinarily, review of such an administrative decision is conducted according to the deferential standards of the Administrative Procedures Act ('APA'), which permits the setting aside of agency actions, findings, and conclusions that are 'arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with the law.'" (citing 5 U.S.C. § 706(2)(A)-(E))).

## III.

After reviewing the Appeals Board opinion, as well as the detailed findings of the ALJ on which the Board relied, we are convinced that there is more than substantial evidence to support its findings and conclusions. The thorough findings in the administrative record rely on well-documented evidence to conclude that Honey Grove did not substantially comply with the relevant regulations. Additionally, the Appeals Board properly found that the civil money penalty was reasonable and supported by substantial evidence.

█ The first violation cited 42 C.F.R. § 483.13(b), which provides residents of skilled nursing homes with "the right to be free from verbal, sexual, physical, and mental abuse, corporal punishment, and involuntary seclusion." In addition, the facility itself must not use "verbal, mental, sexual, or physical abuse, corporal punishment, or involuntary seclusion." 42 C.F.R. § 483.13(c)(1)(i). Among the many reasons it presented for upholding the ALJ's finding that the certified nurse assistant abused Resident 1, the Appeals Board highlighted that the nurse assistant forcibly provided incontinence care on March 8, even though Resident 1 went "haywire." The nurse assistant described Resident 1's behavior as "crazy, swinging his right hand, calling me names." In spite of Resident 1's resistance, the nurse assistant continued to render care, which caused what Resident 1's roommate described to the facility administrator as a "fight." Despite Resident 1's care plan, clearly instructing that "[i]f resident is upset during care, *stop and return later to allow resi-*

1. CMS rescinded various other enforcement actions in its letter to Honey Grove on May 17, 2012, including termination of the Medi-

care/Medicaid provider agreement, the denial of payment for new Medicare/Medicaid admissions, and a $900 per day fine.

*dent to calm down,*" (emphasis added) the nurse assistant continued care against Resident 1's will and "exert[ed] more physical force against the resident than the resident was exerting to escape the situation." Following the incident, Honey Grove staff found multiple bruises on his arms and a "fresh" skin tear on his arm. Because Resident 1 was on an anticoagulant regimen, the bruising on his wrists and arms was particularly deep and pronounced. Based on these facts, the ALJ found the certified nurse assistant "caused injury to Resident 1, thus abusing him."

 Substantial evidence also supports the finding that Honey Grove was substantially noncompliant as of March 3, 2012, the beginning of the 7–day period of "immediate jeopardy." A supervisory nurse notified the facility administrator on March 3 of Resident 1's preference for female-only care, and Resident 1's chart was replete with evidence that his aggressive behavior had been escalating. This evidence is enough to support the finding that the facility should have known of the potential for abuse as of March 3.

 Ample evidence also supports the finding that Honey Grove failed to implement its anti-abuse policies and procedures in violation of 42 C.F.R. § 483.13(c). When questioned during the investigation, Honey Grove staff members reported other incidents involving the same nurse assistant and Resident 1. For example, a staff member wrote in a statement that in late February he overheard the nurse assistant say near the nursing station—in the presence of three other staff members—that he "told [Resident 1] he was gonna have to be changed whether he liked it or not, so turn your ass over." Another staff member also reported that on March 7 the nurse assistant told Resident 1, "[y]ou can get changed the easy way or the hard way." The fact that multiple employees failed to report the

certified nurse assistant's comments about his abusive treatment of Resident 1 shows that although Honey Grove may have had policies in place, they were ineffective. *See Life Care Ctr. of Gwinnett,* DAB 2240, 2009 WL 1176324, at *4 (DHHS 2009) ("[A] policy that exists only on paper provides no benefit to the residents.... Procedures which are not carried out in practice are worthless. Training or other measures to implement a policy can only be understood as sufficient if those measures are calculated to ensure neglect is prevented."), cited by *Miss. Care Ctr. of Greenville v. U.S. Dept. of Health & Human Servs.,* 517 Fed.Appx. 209, 212–13 (5th Cir.2013) (explaining that 42 C.F.R. § 483.13(c) requires a facility to "both *develop* policies and procedures to prevent neglect and *implement* those procedures" (emphasis in original)).

Finally, in light of these other findings, the Appeals Board upheld the determination that Honey Grove was not in substantial compliance with 42 C.F.R. § 483.75, which requires the facility to "be administered in a manner that enables it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident." *See Cedar View Good Samaritan,* DAB 1897, 2003 WL 22326540, at 23–24 (DHHS 2003). We again agree with the Appeals Board that substantial evidence supported this finding.

Honey Grove does not directly contest any of the findings of misconduct. Instead, Honey Grove contends that it was placed in the "untenable position" of either "honor[ing] the rights of a resident" or "provid[ing] a work place free from discrimination and harassment." It contends that Resident 1 was harassing female staff. It also argues that a facility cannot be required to implement a plan of care that violates Title VII of the 1964 Civil Rights

Act and therefore Honey Grove was legally prohibited from honoring Resident 1's preference for female staff. The Appeals Board correctly rejected these arguments. First, it noted that only one alleged act of harassment by Resident 1 occurred prior to the abuse on March 8, and that sole incident had not been reported to the administrator of the facility. More fundamentally, the Appeals Board correctly noted that even "assuming that Resident 1 had made sexual advances to female aides prior to the incident ..., this behavior would not excuse Honey Grove's failure to take reasonable steps to protect the resident from abuse." Finally, the rulings below did not require that Honey Grove implement a "female only" plan of correction; that was Honey Grove's decision. The findings and penalties[2] against Honey Grove resulted from physical abuse being inflicted on Resident 1 and the failure to follow directions that care should be delayed when the resident is agitated. As the Appeals Board explained: "If a policy to limit which aides could provide care to Resident 1 would be discriminatory, then Honey Grove was obligated to take other steps to address Resident 1's escalating behaviors, but does not allege that it did so."

## IV.

Because substantial evidence supports the Appeals Board's decision, we DISMISS Honey Grove's petition for review.

---

**2.** Honey Grove challenges the imposition of the civil money penalty on the basis that it was in substantial compliance with the regulations because it acted in accordance with Title VII, an argument which we have rejected. It also challenges the penalty as "punitive and unreasonable," but makes only a conclusory statement to that effect. Absent any substantive argument, there is no reason

---

to disturb the Appeals Board's well-supported finding that the ALJ properly found the civil money penalty was reasonable based on the regulatory factors set out in 42 C.F.R. §§ 488.438(f), 488.404(b)-(c).